## KYLE & GUNTER v. BOSTICK & SHERROD.

1. A deposition cannot be objected to at the trial, because the interrogatories are leading. The objection must be taken when the question is put, to the witness.
2. When a release is proved to have been made before a deposition is taken, and that the witness knew it, the fact that the release is on file, among the papers in the cause, is *prima facie* evidence of its delivery.
3. A certificated bankrupt, is discharged from all surety debts, though paid by the surety after the bankrupt obtains his discharge, and is therefore a competent witness for the surety, in a suit between him and the creditor.
4. A promise by a debtor, to his creditor, to pay him a sum of money for delay, will discharge the surety, though the money be not paid, unless the promise is usurious, and in that event, the surety is not discharged, unless the money is paid.

Writ of Error from the County Court of Pickens.

Assumpsit by the plaintiffs in error, against the defendants,

on a promissory note for $623, due the 25th December, 1836, executed by them jointly with one Childs.

The defendants pleaded non assumpsit, and that they are the mere securities of Childs, and were released by time being given to him, by the creditor, without their consent. Upon the trial, as appears from a bill of exceptions, the defendants introduced the deposition of Childs, who proved, that he had been released from the payment of all his debts, since the execution of the note, by the bankrupt law, and had also been released by the defendants from all liability upon the note.

To establish the delay, he stated, " I paid Gunter sixteen per cent., to wait with me twelve months, after the note was due, and upon that consideration he did wait with me twelve months, and I executed my note to him for the same *per cent.* to wait with me twelve months longer, he agreed to do. Gunter held the note, and had contracted with him to delay the same twelve months."

The plaintiff objected to certain interrogatories as leading, and to the entire deposition, because the witness was interested, and incompetent, and thereupon the defendant produced a release, executed by them to Childs, dated previous to the time of taking the deposition, and proved to have been executed at the time it bore date, and was found on file among the papers of the cause, but it was not shewn that Childs had ever seen it, or knew of its existence, further than appears from his deposition. The court overruled all these objections, and permitted the deposition to be read ; to which the plaintiff excepted.

The defendants also introduced a witness, who proved that Gunter, one of the plaintiffs, had told him before the commencement of the suit, that Childs had executed to him a note of fifty dollars, to extend the time of the note sued on, for one year ; whereupon, Gunter produced, and proved a note made by Childs, to him, dated 9th January, 1838, for the payment of $50 on the 25th December after, and offered to read the same to the jury, for the purpose of showing that the note spoken of by the witness had not been paid, which on motion

Kyle & Gunter v. Bostick & Sherrod.

of the defendant, was excluded by the court, and the plaintiff excepted.

The plaintiff moved the court to charge,

1. That a promise by the principal to pay money for extension of the time of payment, will not release the sureties, if the money is not paid.

2. That if they believed all the testimony, they must find for the plaintiffs.

These charges the court refused to give, and charged, that if Childs executed his note for fifty dollars to the plaintiffs, upon an agreement to give day of payment for one year, the securities would be released, whether the note was paid or not. To all which the plaintiff excepted, and which he now assigns as error.

PECK & CLARK, for plaintiffs in error.

J. B. CLARKE, contra.

ORMOND, J.—The objection to the deposition of Childs, because the interrogatories were leading, could not be made at the trial of the cause. There is no difference in this respect, between evidence taken by deposition, and the oral examination of the witness in court. In either case, the objection must be made when the question is propounded to the witness, or it will be considered as waived. [Towns & O'-Brien v. Alford & Butler, 2 Ala. 378.]

The objection to the release is alike ineffectual. It was proved to have been in fact made, before the witness was examined, and from his deposition, that he knew it had been made, and the fact that it is found on file among the papers in the cause, is at least *prima facie* evidence of its delivery.

The objection to the witness, because of his bankruptcy, is founded upon the idea, that to render him competent, he should have released his interest to the assignee. The effect of his testimony in this case, was not to relieve his estate from the payment of a debt, and thus to increase his interest in the surplus, if any, because if by the aid of his testimony, the sureties should avoid the payment to the creditor, the debt would still be due from the principal debtor, and would

consequently remain a charge upon the estate. Independent however of this consideration, the question appears to be settled by the express terms of the bankrupt act. The fourth section declares, that "the discharge and certificate, when duly granted, shall in all courts of justice, be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, *which are proveable under this act*, and shall, and may be pleaded as such," &c. To ascertain therefore whether a bankrupt is discharged from a debt, contract, or engagement, it is only necessary to inquire whether it was "proveable" under the act.

The fifth section is devoted to this subject, and provides that "all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry, and *respondentia* bonds, holders of policies of insurance, *sureties*, indorsers, bail, or other persons having uncertain, or contingent demands against such bankrupt, shall be permitted to come in, and prove such debts, or claims, under this act, and shall have a right, when their debts and claims become absolute, to have the same allowed them," &c. It is impossible not to see, that the design of the act was, to absolve the bankrupt from all his debts, engagements and contracts, whether due at the bankruptcy or not; or whether absolute or depending on some further contingency. It is not left to speculation or conjecture, whether the contract of a surety, which had not been enforced at the time the bankrupt took the benefit of the act, is included in the list of contracts, which the bankrupt is discharged from. As a general rule, it is certainly true, that until the surety pays the debt of his principal, he has no demand upon him; or, to speak with more precision, the relation of debtor and creditor does not subsist between them until such payment; but by the express terms of this act, the surety is permitted to come in, and prove his liability to pay, as a debt, and being proveable under the act, the bankrupt is discharged from it. From this view it appears, that the bankrupt had no interest whatever in this controversy between his former creditor, and his sureties, being alike discharged from the claims of both.

The question arising upon the exclusion of the note offered in evidence, and of the charges given and refused, present

some embarrassment, from the manner in which they are pre-
sented upon the record.

There is some difficulty in ascertaining, what the contract
was, which the witness, Childs, deposed to, whether he
meant to state that there were two contracts for delay—one
by which sixteen *per cent.* per annum, was paid in money for
delay, and and a subsequent agreement for which a note was
executed—or whether there was but one agreement; and if
so, whether any portion of the money agreed to be given for
the delay, was in fact paid when the agreement was executed.
Nor was any question expressly made in the court below, so
far as we can judge from the record, as to the true nature of
the contract, whether it was usurious, or upon sufficient con-
sideration or not.

The two first charges moved for by the plaintiffs, assume,
that although a note for fifty dollars was executed by the
debtor for delay, without the consent of the sureties, that it
will not absolve them from liability unless the note was paid.
These charges the court refused to give, and in the last
charge affirmed the converse of this proposition to be the law.
This is certainly correct, assuming the contract to be valid,
and upon sufficient consideration, which the proposition as
put, appears to admit. Upon the execution of such a con-
tract, the sureties would be immediately discharged, whether
it was ever performed or not.

The court was however asked to charge the jury, upon all
the evidence in the cause, and to instruct them, that if they
believed it, the defendants were not entitled to a verdict. As
the testimony was almost entirely documentary, and all in-
troduced by the defendants, no objection exists to asking such
a charge; and the question arises, what is the testimony prov-
ed in the cause. Although the testimony of Childs is some-
what ambiguous, we think the fair interpretation of it is, that
there was but one contract made for the delay, and that Childs
agreed to allow sixteen per cent. *per annum* for this indul-
gence. It is true, in one part of his deposition he says, "I
paid Gunter sixteen per cent to wait with me twelve months,
and upon that consideration he did wait with me twelve
months." He adds, in the same sentence, "I executed my

75

note to him for the same *per cent.* to wait with me twelve months longer, he agreed to do." But in answer to the next question, whether any time had intervened after the note became due, within which suit could not have been brought, he says, " In consideration of the above payment of sixteen per cent. said Gunter verbally promised me that he would not sue on the note."

It seems necessarily to follow from this, that there was but one suspension of the right to sue, and this is confirmed by the admission of the plaintiff, Gunter, brought out by the defendants, that *Childs had executed to him a note for fifty dollars, to extend the time of payment for one year.* It appears to us, the just interpretation of this testimony is, that when the witness speaks of paying sixteen per cent. he means it was secured by the note he executed; but this note it appears was but for fifty dollars, which would be but about eight *per cent.* on the amount of the debt, which added to the interest upon the debt secured also by note, would make the sixteen per cent. It is difficult to suppose, that Childs would have spoken in this ambiguous manner, when his attention was particularly directed to it, if in fact he had made two successive agreements for delay, one of which was obtained by the payment of money, and the other secured by a note.

In this view of the case, the question arises, whether a promise by the debtor, to pay the creditor usurious interest for delay, is such a contract as will release the sureties. We have met with but few cases precisely in point, but it appears to us, that an agreement which the creditor cannot enforce, but at the pleasure of the debtor, is not such a contract as will discharge the sureties. A contract without consideration will not have this effect, because the debtor cannot enforce it, and the reason is precisely the same when it is unavailing to the creditor. All the authorities agree, that a contract for delay between the debtor and creditor, which will absolve the sureties from payment of the debt, must be a valid, binding contract, which will disable the creditor from suing, during the period stipulated. Yet it is perfectly clear, that this contract did not prevent the creditor from disregarding his promise, and suing for the debt immediately, because the contract for the delay was absolutely void.

In the cases of Tudor v. Goodloe, 1 B. Monroe, 322, and Pykes v. Clarke, 3 Id. 262, this precise point was so determined—that a promise by the debtor to the creditor to pay him usurious interest for delay, did not discharge the surety; and also in Wilson v. Langford, 5 Humph. 320.

If the money had been in fact paid by the debtor, instead of a promise to pay it merely, the case would be different. There would then have been a consideration for the delay, and it would not have lain in the mouth of the creditor to say, that it was an illegal one. Being an executed contract, it would be obligatory on him, as one of the parties to it.

As it respects the proposition of the plaintiffs, to introduce the note of Childs for $50, it is very clear, that after the defendants had introduced the admissions of the plaintiffs, that such a note had been received by them from Childs, they had the right to introduce the note itself, and it was for the jury to say, whether it was the note referred to by the witness, or not. The possession of the note by the plaintiffs, was cogent testimony to prove that the usurious interest promised for the delay had not in fact been paid.

We have already remarked, that the testimony is not so certain as it is desirable that it should be, and if we have mistaken it, it can be rendered certain upon another trial, and as the cause would at all events have to be reversed, upon the last point considered, the defendants cannot be injured by the view taken of the testimony if incorrect.