# DONNELL v. JONES, ET AL.

1. When an attachment is wrongfully and maliciously sued out, the defendant is not confined to the remedy afforded by the bond, but may sue in case, for the injury he has sustained, before the attachment suit is determined.

2. It is no answer to a declaration in case, for wrongfully and maliciously suing out an attachment, that the defendant had good reason to believe, and verily did believe, that the plaintiffs were about to dispose of their property fraudulently, with intent to avoid the payment of the debt sued for; and therefore a plea to this effect, setting out the facts upon which such belief was predicated, is bad on demurrer.

3. The fact that a defendant sued in attachment, is insolvent, is proper to be given in in evidence, as a circumstance to be considered by the jury, in ascertaining the damages, but is no answer to the action, and therefore a plea relying on it as such, is bad on demurrer.

4. Objections to testimony taken thus, in the court below, to exclude "the latter part of the answer of J D W, to the 4th interrogatory,"—" to exclude so much of the answer to the 5th interrogatory, as was matter of opinion,"—"to exclude all and every part of the testimony, which was offered by the plaintiff, showing their credit was impaired by suing out the attachment," —and a general objection to the interrogatories to a witness, " to all and every interrogatory inquiring of specific damage, or loss, sustained by plaintiffs, and to all answers on that subject, and to all opinions of the witness," are too vague, and indefinite to require the inferior court to act, or to enable an appellate court to supervise it.

5. A leading question is one which suggests to the witness the answer desired, but a discretion must be left to the court trying the cause, to be ex-

ercised in reference to the character of the investigation, the condition and disposition of the witness, and the peculiar circumstances attending the examination.

6. The damages which a mercantile firm, composed of three individuals, can recover, in an action for wrongfully and maliciously suing out an attachment, must be for an injury done to their joint business, and must not only be the natural, proximate, legal result, or consequence of the wrongful act, but must affect the joint business, or trade of the partnership. Injury to the private feelings of the individual partners, is not a proper subject of inquiry.

7, Proof of special damage, arising from the loss of reputation, credit, or business, or the withdrawal of particular customers, cannot be made, unless such special damage is averred in the declaration.

8. A statement by a witness, "that from his acquaintance with the business of the plaintiffs, the issuing and levying of the attachment, had the effect of destroying their credit and standing as merchants, and preventing them from carrying on their business, and forcing them into an assignment," is not admissible as evidence, being the opinion of the witness, or his deduction from facts, and not a statement of the facts themselves.

9. A loss accruing from a forced sale of goods, under an assignment, is not a natural, or proximate consequence of the issue and levy of an attachment by the creditor, previous to the making of the assignment by the debtor.

10. Under the general averments of the declaration, evidence is admissible to prove the general loss of credit, and mercantile character, but not to prove the loss of any particular customer.

Error to the Circuit Court of Autauga. Before the Hon. G. Goldthwaite.

CASE by the defendants in error, for the wrongful and malicious suing out by the plaintiff in error, of an ancillary attachment, by which their reputation and credit as merchants were destroyed, &c. See the declaration at length in the opinion of the court.

The defendant pleaded five pleas, the two first of which the plaintiff took issue upon, and demurred to the third, fourth, and fifth, which are set out *in extenso* in the opinion. The court sustained the demurrer to these pleas.

From a bill of exceptions, it appears, the plaintiffs were merchants, and partners, in the city of Montgomery. That the plaintiffs were indebted to the defendant, in the sum of $5,954, due by two promissory notes, upon which he commenced suit, and afterwards making the necessary affidavit,

sued out an ancillary attachment, which was levied on the stock of goods, wares and merchandize of the plaintiffs. The plaintiffs offered as evidence certain depositions of merchants residing in the cities of New York, Mobile and New Orleans.

The defendant then made a 'general objection to all and every part of the testimony which was offered for the plaintiffs, showing the credit of the plaintiffs was impaired by suing out the attachment, and moved to exclude all such testimony from the jury, which objection the court overruled. He then made special objections to particular portions of the testimony so offered, as follows:

Defendant objected to the reading of the latter part of the answer of J. D. Winthrop, to the 7th interrogatory. The interrogatory reads thus: "Please state, if, from your acquaintance with the business of R. Jones & Co., as nearly as you can, whether or not it was impaired and injured by the suing out and levy of the attachment by Andrew Donnell. If yea, how was it injured, the nature of the injury, and the extent of said damage and injury then done said firm, by the issuance and levy of said attachment?"

"Not having heard of the attachment spoken of, I cannot say whether the business of R. J. & Co. was injured or impaired thereby, but the rumor of their failure was very great injury to their credit here." The objection was overruled.

Defendant objected to the reading of the answer of T. Bates to the 6th interrogatory, which objection was overruled.

The interrogatory reads thus: "Please state whether, or not, you are acquainted with the manner in which plaintiffs carried on their business in the city of New York. Whether or not their purchases were made on a credit, what circumstances are regarded as giving facilities to southern merchants seeking to buy goods in the city of New York?"

The answer is—"I did not know what capital R. Jones & Co. had, but knowing them to be upright and honest young men, and knowing the good business capacity of Mr. Jackson, I trusted them," &c.

The defendant also objected to the answer of J. H. Parsons to the same interrogatory, which objection was overruled.

The answer reads thus: "The manner in which they have been injured, is by the total ruin of their credit, and, indeed, their character has also been impaired."

Plaintiffs offered to read interrogatories which they had propounded to J. A. M. Battle, and the answers thereto. Defendant had filed objections at the time of crossing them, thus: "Defendant objects to any and every interrogatory inquiring of specific damage or loss sustained by plaintiffs. And to all answers on that subject, and to all opinions of this witness. And therefore objected, on the trial, to the answer to the 5th interrogatory, which reads—"From your acquaintance with the business of plaintiffs, please state how it was affected by the suing out and levy of said attachment. If any damage was sustained thereby, what damage, and to what extent. Please state the same fully."

The answer reads—"From his acquaintance with the business of plaintiffs, the issuing and levy of the attachment had the effect of destroying their credit and standing as merchants, and preventing them from carrying on their business, and had been seriously damaged in character and business, and they thrown out of business perhaps for several years." It caused great damage to the character, and ruin to the credit of said plaintiffs."

Plaintiffs offered to read interrogatories propounded by them to L. W. Phillips, and the answers thereto, to which defendant had filed, at the time of crossing, this objection: "The defendant objects to so much of the latter part of 4th direct interrogatory as requires witness to state the effects produced on the business affairs of plaintiffs by levy of the attachment referred to in this interrogatory, on the ground, that this is calling on the witness, either for his opinion on the facts, or for his conclusions from the facts."

The 4th interrogatory reads thus: "Have you, or have you not, any knowledge of an attachment having been levied on the stock of goods, &c., of plaintiffs, on or about the 1st January, 1845, at the suit of A. Donnell. If yea, state fully all you know concerning the levy of said attachment, and its effect on the business affairs of R. J. & Co."

Defendant also objected to the answer, which reads thus: "The levy of the attachment created the greatest surprise to

the members of the firm, to myself, and to the community generally. Planters with whom plaintiffs had dealings in cotton, and who would have readily sold their crop to the plaintiffs, would not sell any cotton to the plaintiffs after they heard of the issuance of the attachment."

Defendant also objected to reading the answer of this witness to the 5th interrogatory, which reads thus: "Did there, or did there not, any injury result to the business affairs of said firm in consequence of said attachment, any if any, state what injury, and how the injury accrued, its extent, and your means of knowing. Answer fully."

The answer reads—"Injury accrued to their business, inasmuch as the regular and large customers of the plaintiffs, with few exceptions, left off their dealings, and transferred their business to other houses, previous profits could not be realized, and goods were sold at the price they cost in New York, by order of the assignee, in order to reduce the stock on hand, &c., also, loss by diminution of profits, I place at from 30 to 50 per cent."

Defendant also objected to the reading of the answer of J. Jackson to the 4th interrogatory. "If you have any knowledge of the situation of the business affairs of plaintiffs, before and after the levy of said attachment, please state what it was, as fully and accurately as you can, up to 15th April, 1845."

The answer reads—"That custom and trade were diverted from the concern to other places, and that it became difficult to sell the goods, even at New York prime cost.

Defendant also objected to the answer to the 5th interrogatory, which reads thus? "Have you any knowledge of any damage or injury resulting to the mercantile affairs of plaintiffs, by the issuance and levy of said attachment, up to 15th April, 1845. If yea, please describe the same fully and particularly, how and in what manner, and to what extent said damages, if any, accrued, and your opportunity of knowing, &c."

The answer reads—"That whereas, before the 1st January, 1845, they could, of my own knowledge, negotiate for large sums of money upon their own credit; they could not raise any monies subsequent to the issuing of the attachment, upon their credit."

Defendant also objected to the reading of the answers of H. K. Bagget, to the 7th interrogatory, which reads thus: "Please state, from your acquaintance with the business of said R. J. & Co., as nearly as you can, whether, or not, it was injured and damaged by the issuance and levy of said attachment, by said A. Donnell. If yea, how was it injured, the nature and extent of said injury and damage then done to said plaintiffs, if any."

The answer reads—" Their business was injured by the total ruin, and forcing the house into an assignment, and the consequent forced sales of their property."

All which objections were overruled, and defendant excepted.

The defendant also objected to evidence of special damage. The court overruled the objections, and the defendant excepted. It was in proof, that the plaintiffs, two days after the attachment issued, made an assignment of their effects.

The defendant moved for the following charges: 1. That if the plaintiffs were insolvent at the time the attachment issued, they were not entitled to damages for injury to their credit.

2. If the plaintiffs' credit was based alone on their integrity, and ability to transact business, then the loss of their credit is not the subject of damages in this action.

3. Under the declaration in this case, the plaintiffs are not entitled to damages for the levy of the attachment, because no damages are alledged to have been sustained to the goods themselves, nor loss or injury to the plaintiffs, by being deprived of the possession of the goods.

4. If the defendant had good reason to believe, and did believe, that plaintiffs were about fraudulently disposing of their property, to avoid the payment of his debt, this is a circumstance to be taken into consideration by the jury in mitigation of damages.

5. That if the defendant was not actuated by malice, in suing out the attachment, plaintiff could only recover for actual injury to the goods themselves, and if the goods were not taken out of his possession, he could only recover nominal damages.

The court refused to give these charges, and charged, that

they could recover for the actual injury they had sustained, by the act of the plaintiff, if wrongful—and for injury to their mercantile business—but if the plaintiffs, at the time the attachment issued, were about fraudulently to dispose of their property, with intent to defeat the plaintiff's debt, they must find for defendant. That if the plaintiffs were insolvent at the time the attachment issued, yet if, by the profits of the mercantile business they were engaged in, they might probably have extricated themselves from such insolvency, it was proper to take into consideration the injury done to their credit, as merchants, by the suing out of the attachment, should they find for the plaintiff. That if the plaintiffs had good reason to believe, at the time the attachment issued, that the plaintiffs were about fraudulently to dispose of their property, to avoid the payment of his debt, though it would not reduce the actual damage sustained, it should prevent them from finding vindictive damages.

The jury found for the plaintiffs ten thousand dollars, for which judgment was rendered.

The defendant excepted to the opinions and charges of the court, and now assigns for error, the matters of law arising out of the bill of exceptions, and of the demurrers sustained to his pleas.

YANCEY and T. & J. WILLIAMS, for plaintiff in error.

Special damage cannot be proved unless specially alledged in the declaration, even in an action where the words are actionable in themselves; and a fortiori if they are not. 1 Chitty's Pl. 396, 397, 399; 2 Greenl. Ev. § 89, 254, 420; 2 Phil. Ev. 248; 2 Starkie's Ev. 446, 466; 1 Starkie on Slander, 21, 23, 24, 42, 43, 441, 445; Buller's N. P. 7; Leigh's N. P. 1298, 1388; De Forrest v. Leete, 16 Johns. 122; Johnson v. Robertson and wife, 8 Porter, 486; Dickinson v. Boyle, 17 Pickering, 78; Herrick v. Lapham, 10 John. 281; Hartley v. Herring, 8 Term, 130.

Damages, not the natural and proximate result of the act complained of, cannot be recovered. Sedgwick on Dam. 74-5-8, 88, 98-9; 2 Greenl. Ev. 210, § 256; 1 Starkie on Slander, 204; Deyo v. Wagonner, 19 John. 241.

Damages which are not wholly attributable to the act

complained of, cannot be recovered.   1 Starkie on Slander, 205; 2 Starkie's Ev. 466.

A mere apprehension of damage, or ill consequence, cannot constitute special damage, and is not ground for a recovery.   1 Starkie on Slan. 203.

No proof can be received of damage done to goods by the act complained of, at a time when the legal estate in said goods was not in plaintiffs.   Squire v. Gould, 14 Wendell, 159.

Evidence of the loss of customers by the act complained of, can only be made by the customers themselves.   Ashley v. Harrison, 1 Esp. R. 48; Tilk v. Parsons, 2 C. & P. 201; Johnson v. Robertson and wife, 8 Porter, 486; 2 Starkie's Ev. 466.

Opinions of merchants as to the effect of the act complained of, upon a merchant's credit, inadmissible.   1 Greenl. Ev. § 441; Lincoln v. S. & S. R. R. Co. 23 Wend. 425; P. & M. Bank of Mobile v. Borland, 5 Ala. 531, 546; Andrews & Bro. v. Jones, 10 Ala. R. 460; Herrick v. Lapham, 10 John. 281.

In an action of this character, by co-partners in trade, damages can only be recovered for injury done to them in matters in which they are jointly interested.   Haythorn v. Lawson, 3 C. & P. 196 ; Goldstein v. Foss, 2 Ib. 253, note ; Story on Part. § 257.

Credit, is "trust—transfer of goods in confidence of future payment."   Webster ; Bouv. L. Dic.

Character, is "the peculiar qualities impressed by nature, or habit, on a person, which distinguish him from others." Webster.

J. A. Campbell and H. W. Hilliard, contra.

The demurrers to the pleas of the defendant were properly sustained.   Wilson v. Outlaw, Min. R. 367 ; Kirksey v. Jones, 7 Ala. R. 622: Pitts v. Boroughs, 6 Ala. 733 ; 9 Ala. R. 407, 825 ; 11 Ib. 492; 10 B. & C. 249.

Words or acts which tend to the injury and disparagement of a person in his trade or profession, and which proceed from the malice of the party employing them, furnish the grounds

of an action to the party injured. It is not necessary to aver or to prove damage. Damage is implied by law. 7 Conn. Rep. 257; 1 Lord Ray. 692; 2 Ib. 1480; 7 Meis. & W. 423; Cro. Jac. 499; 1 Binn. 178; 5 Wend. 263; 1 Pick. 524; 5 John. 476.

The sources of damage to such a party, are stated in the precedents furnished by Wentworth and Chitty, and are stated by Sedgwick. They are the damages sustained by the party in his business, credit, feeling, social intercourse and property. 8 Went. Pl. 313; 2 Chit. Pl. 641, 617; Sedg. 21; 3 Mass. 546.

The damages may be shown by evidence. The object of the evidence should be to determine their nature and extent, and whatever is pertinent to the issues is competent. In the absence of such evidence, the law would only imply nominal damages. 1 Rawle, 25; 1 Gall. 429; 1 Salk. 19; 9 Ala. 173; 3 Ib. 206; 24 E. C. L. R. 87:

The objections of the plaintiff, that loss of business—loss in the sale of goods—loss of credit and custom, and of mercantile character—are grounds of special damage, and that the manner of the loss must be specially stated, is an inaccurate view of the law on this subject. Special damages are the particular and unusual effects which follow from an injurious act. They are generally, in cases of defamation, the consequences of a reiteration of the original wrong, by some third person, moved by the impression that the wrong has made upon him. In such cases, the law supposes the person injured unable to prove special damages, and when he desires to do so, imposes the obligation of giving notice to the defendant of his intention. When the wrong implies loss to character, property, credit, and business, and the loss does not result from the isolated acts of a few persons who can be named, the damages may be recovered under the general averments. Chit. Pl. 395-6; 11 Price, 19; 1 Esp. 48; 1 Strange, 666; 8 T. R. 130; 17 Wend. 71; 3 Mass. 546.

The plaintiffs were entitled to recover damages for the prospective injury they might sustain in any of these capacities. 47 Eng. C. L. R. 568; 7 Hill, 61; Sedg. 108.

The objections that the evidence consists of hearsay evi-

dence, and of opinions upon the declarations of others, are not sustained by the facts. The points involved in the issue, required the court to inquire of the mercantile character, reputation, and business of the plaintiffs—and the effects produced on their character, reputation, and business, by the act of the defendant. To ascertain the nature and extent of the injury—the nature and extent of their business—the quality of the plaintiffs' dealing, their connections, must be ascertained, and the effects of the defendant's acts upon these. An effect upon the credit of the plaintiffs, by a particular act, can only be ascertained by disclosing the state of the public mind in reference to the credit of the party, after the act complained of, and the connection between that act and the state of the public mind. 7 Ala. Rep. 784; 10 Ib. 288; 2 Dev. 63; 2 Pick. 304; 10 B. & C. 527.

The general loss of custom—diminution of business—sacrifice of trade—are all admissible inquiries, and these facts may be ascertained by the withdrawal of particular customers, not as evidence of special damages, but as conducing to show the general damage, and in connection with such proof. 11 Price, 19; 8 T. R. 130.

Objections to interrogatories cannot be taken for the first time at the hearing. The party producing the witness is entitled to notice of the objection, that he may modify his question. 2 Ala. 379; 10 Ib. 589. This principle answers the objections to the first set of interrogatories.

General exceptions to questions, or answers, without stating any ground of objection, will be overruled. 10 Ala. 453; 2 S. & P. 28.

These authorities apply to the exceptions to the testimony of Thomas Bates, Cyrus Phillips, to some of the exceptions to the testimony of Battle, to portions of the exceptions to the testimony of Lewis Phillips, and to the general objections.

Objections taken to testimony at the trial, are entire in their nature. The whole testimony excepted to must be incompetent, or the objection will be overruled. The court is not required to separate the competent from the incompetent testimony. 2 Ala. 280; 4 Ib. 265; 7 Ib. 269.

CHILTON, J.—1. It is a well established rule of pleading, that a demurrer brings the whole record before the court, and that the court upon an examination of the record, will give judgment against the party who committed the first fault.    United States v. Gurney, et al. 4 Cranch, 333 ; Ansley v. Mock, 8 Ala. Rep. 444.    This rule applies to the case under consideration, and imposes upon us the necessity, not only of considering the sufficiency of the pleas to which the demurrer was sustained, but also, the sufficiency of the plaintiff's declaration ; for if that be wanting, the demurrer should have been visited upon the plaintiff as having committed the first fault.    1 Porter's R. 107.

The declaration avers, that Richard Jones, Geo. T. Jackson, and Samuel Jones, merchant co-partners, under the name and style of Richard Jones & Co., were engaged in the mercantile business, in the city of Montgomery, and had committed no act of fraud whatever, nor contemplated any fraudulent sale of their goods, wares and merchandize, and not being liable or subject to have a writ of attachment issued out against them, but being in great regard, reputation and credit among all persons with whom they had dealings, the defendant, well knowing the premises, but falsely, wickedly and maliciously intending to aggrieve and oppress the plaintiffs, to bring them into disgrace, and put them to great expense, &c., and to cause them to be regarded as insolvent, dishonest, and wholly unworthy of credit, and to cause them to give up their business, and to suffer their goods, &c., to be seized, &c., did make an affidavit, which, with the attachment, is set out in the declaration, and in which said Donnell swears to the amount due him from Richard Jones & Co.— that he had instituted suit to recover the same, and that said firm was about fraudulently disposing of their property, to avoid the payment of the debt sued for. After averring the levy of the attachment, and seizure of the goods of defendants, in virtue of it, the declaration proceeds, " and the said plaintiffs, by means of the suing out said attachment against the estate of the said plaintiffs, and the several proceedings had thereon, have lost their credit and reputation, with and amongst all their friends, neighbors and acquaintances, and all persons with whom they had business transactions, and have lost the

use, benefit and advantage of their said business, and forced wholly to abandon it, and to expend large sums of money in defending against said attachment, and by means of the premises, have been wholly ruined in their circumstances," &c.

2. On the part of the plaintiff in error, it is insisted that the action was misconceived—that the plaintiff below should have brought his action upon the bond given by Donnell, in order to procure the issuance of the attachment, as required by the statute. Dig. 61, § 34. We do not agree with the counsel in this position. The act of 1837 provides, that when any original attachment shall have been wrongfully or vexatiously sued out, the defendant may at any time commence suit against the plaintiff suing out the same, and recover any damages which he may have sustained, or to which he may be entitled on account thereof, whether the suit commenced by attachment be ended or not. Dig. 61, § 32. This statute has been construed to embrace the suing out of ancillary as well as original attachments—a construction which has for some time been acted upon in our courts, and from which we do not feel at liberty now to depart. See Kirksey v. Jones, 7 Ala. Rep. 622; McCullough, et al. v. Walton, 11 Ala. 492. An action on the bond required to be given on the issuance of original attachments, is governed by the same rules as an action upon the case. Hill v. Rushing, 4 Ala. Rep. 213; Herndon v. Forney, Ib. 243. If the attachment was wrongfully sued out, then the defendant in the attachment can only recover for the actual damage he has sustained, but if not only wrongful, but vexatious, or (which is the same thing) malicious, then vindictive damages may be recovered. McCullough v. Walton, *supra.*

Admitting, that at the common law, no action lies for the misuse of legal process, unless the party acted from malice, or was guilty of fraud or oppression, or gross negligence, and that the statutes designed to enlarge the common law remedy by extending the right of action to the *wrongful* suing out, in cases where the ingredient of malice is wanting, still, the argument avails noting for the plaintiff in error. It is perfectly clear, the statute did not design to take away the common law remedy. That it is cumulative, and does not

restrict the remedy of the injured party to the attachment bond, and inasmuch as the statute inhibits the defendant in attachment from putting in issue the grounds upon which it is sued out, it follows he is not bound to wait until the attachment suit is determined, but may institute his suit at any time, to recover such damages as he has sustained by the wrongful and malicious use of the process of the court. It is unnecessary for us to re-examine the point, which appears to be settled in the case of Kirksey v. Jones, as to whether, if the party sues merely for the *wrongful* suing out the attachment, his action must be on the bond, and not case, as the point does not arise in the case before us, which is not merely for the wrongful, but the malicious act of the plaintiff in error.

The effect of a different rule, however, in connection with our former decisions, will best show the propriety of that point in the adjudication. Suppose, as insisted upon by the counsel for the plaintiff in error, the injured party is confined to his action upon the bond executed upon the issuance of the ancillary attachment. The bond, unlike that required in original attachments, is " to pay all such damages and cost as the party defendant may sustain by the *wrongful* suing out said attachment," and is to be in the penalty of *double the amount sworn to be due.* Clay's Dig. 62, § 34. No more than the penalty of the bond can be recovered in an action of debt or covenant upon the bond itself. Herndon v. Forney, et al. 4 Ala. Rep. 247. Now, if an individual, incited by the most selfish and malignant feelings which competition in business may serve to engender, should obtain an attachment upon a note for $50 on grounds falsely and maliciously alledged, involving moral turpitude, and thus succeed in his design of ruining his rival, the injured party, in the prostration of his credit and business, may have sustained damage to the amount of $10,000, as a natural and proximate consequence resulting from such wrongful and malicious act. The common law in such case, allows the jury, if they choose, to make an example of the defendant, when sued for redress, and will allow them to go beyond the actual damage the party has sustained. But what could he recover if confined to the bond? One hundred dollars! We

cannot intend that the legislature designed the statute thus to operate, by taking away the common law remedy. We do not regard the declaration as counting upon the loss of character of the plaintiffs as merchants, resulting from the words in the affidavit, charging an intention to commit a fraud in avoiding the payment of the debt sued for. It is certainly true that words, used in the course of judicial proceedings, cannot be made the foundation of an action.

In this case, however, the *gravamen* of the action is the injury which accrues from the wrongful and malicious suing out the attachment. The injury to the credit, &c. of the firm is but a consequence of that act, or is stated in the declaration as inducement. The declaration, we think, is in accordance with the forms found in the most approved works on pleading. See 2 Chitty's Pl. marg. p. 619, 620; 8 Went. Pl. 313. But if it were true, that the plaintiffs could not recover for any damage resulting from loss of character and credit, (and we shall have occasion to notice this point more particularly hereafter,) still, we think, that as the declaration sets forth other injurious consequences resulting from the tortious act complained of, the court might regard it as sufficient, rejecting as surplusage the averment of consequential damage from loss of character, &c. 1 Chitty's Pl. 196; Evans v. Watrous, 2 Porter's Rep. 205. And although a connected history of the injury the plaintiffs below may have sustained, contained matter proper for two counts, still, it may be embraced in one, (Ib.; Abercrombie v. Knox & Co. 9 Por. Rep. 629,) since by our statute special demurrers have been abolished. Digest, 334, § 119; Castles v. McMath, 1 Ala. Rep. 326.

Various other objections have been taken to the declaration, which we will notice more fully when we come to consider the admissibility of the testimony which was objected to on the part of the plaintiff in error.

4. The demurrer was properly sustained to the third, fourth and fifth pleas of defendant below. The third plea attempts to justify the issuance of the attachment, upon the ground "that the plaintiff in error had good reason to believe, and did verily believe, that the said Richard Jones & Co. were about to dispose of their property fraudulently,

with intent to avoid the payment of the debt sued for," &c. The grounds of such belief, as stated in the plea, are—1. That said Richard Jones had informed defendant below that the firm of R. J. & Co. was unable to pay its debts then due and unpaid. 2. That before the issuance of the attachment, said Richard informed him, if the said firm were driven by their creditors, they would make an assignment to Messrs. Rives, Battle & Co. of Mobile, to whom they were indebted to about $24,000. 3. And because said Richard Jones, before the suing out the attachment by the plaintiff in error, informed him "that the pecuniary difficulties under which said firm labored had been made known to said Rives, Battle & Co., but should not be extended to any of the creditors save the plaintiff in error." The fourth plea asserts the insolvency of defendants in error at the time the attachment was sued out, and sets forth numerous large demands existing and unpaid against them. The fifth is but a repetition of the third, omitting the reasons upon which the party's belief was founded.

In Alexander v. Hutchison, 9 Ala. Rep. 825, the circuit court had charged the jury, " that if the defendant, when he made the affidavit, had good reason to believe the fact to be as therein stated, such belief, founded on sufficient reason, in law justified the suing out the attachment, and in that event, the jury should find for the defendant." This court held the charge erroneous, and reversed the cause, deciding that the plaintiff in the attachment sued it out at his peril. If the plaintiff in good faith believed the cause stated in his affidavit existed, and acted without any malice, he would, as we have before stated, be responsible only for the actual damage which the defendants in the attachment had sustained; but if, in addition to its being wrongfully sued out, it was also vexatious, or malicious, then exemplary damages may be superadded. The principle settled in the above case, as well as the case of Kirksey v. Jones, 7 Ala. Rep. 627, is conclusive against the third and fifth pleas. The fourth plea is no answer to the declaration. That the firm of Richard Jones & Co. was unable to pay all the demands against it, could not justify a resort to the extraordinary process of attachment. The fact of insolvency was proper to be given in evidence, as

Donnell v. Jones, et al.

a circumstance to be considered by the jury in ascertaining the damage the defendants in the attachment had sustained by the wrongful and vexatious suing out of the attachment, as affecting the credit of the firm, but certainly could constitute no bar to a recovery, else an insolvent man could never sue for injury done to his property, by a wrongful and malicious resort to the process of the court; and as his creditors in such case could not maintain an action, the anomaly would be presented, of a grievous wrong and consequent injury, without any remedy.

The plea responds merely to *one* of the facts stated in the declaration in aggravation of damages, when it purports to answer and bar the whole action, (1 Chitty's Pl. 453, 455; Nevins v. Keeler, 6 Johns. Rep. 63; Hallet v. Holmes, 18 Ib. 28,) the gist of which action is, the injury consequent upon the wrongful and vexatious suing out the attachment. 1 Saund. 28, et n.; 1 Hen. Bl. Rep. 555; 2 Camp. Rep. 175.

5. We will next address ourselves to the various points, so elaborately discussed at the bar, arising out of the admission of testimony in the court below, as shown by the bill of exceptions. These perhaps we may consider with greater perspicuity under the following classification: 1. Such objections as this court may not properly regard as grounds for reversal, the same not having been properly made in the court below. 2. Objections which question the admissibility of the proof, on the ground that it was matter of opinion. 3. That a portion of the proof admitted, was secondary hearsay evidence. 4. And lastly, that proof was allowed of damage for which in this action, and under the state of the pleadings, the plaintiffs below were not entitled to recover.

In Towns & O'Brien v. Butler & Alford, 2 Ala. Rep. 378, it was held that objections to questions, on the ground that they are leading, must be made when the questions are propounded, and cannot be made for the first time at the trial. See also Kyle & Gunter v. Bostick & Sherrod, 10 Ala. Rep. 589. So, if a general objection be made to an entire interrogatory, when part of it was proper, the court is not bound to distinguish and separate the competent from the illegal part, but may overrule the objection. Borland v. Walker, et

64

al. 7 Ala. Rep. 269.  And where objection was made to the
whole deposition,  " because of various defects apparent from
the notice, caption and body of  said deposition," no defects
being specifically pointed out, it was held the court was not
bound to cast about in search of the grounds for such unde-
fined objections, and very properly overruled the motion to
exclude.  Wallace v. Rhea & Ross, 10 Ala. Rep. 251; Mil-
ton v. Rowland, 11 Ala. Rep. 732.  Neither will the court
entertain a motion, made for the first time *at the trial,* to
suppress an entire  deposition which has been taken accord-
ing to the statute, upon the ground that some of the interro-
gatories are not sufficiently answered.  Carter v. Manning
& Jackson, 7 Ala. Rep. 851; Spence v. Mitchell, 9 Ala. Rep.
744.  These rules are designed to discourage technical ob-
jections, and to advance the ends of justice by preventing
surprise to the opposite party, and to enable the court to pass
a considerate judgment upon the matter to which its atten-
tion must be directed by some specific exception.  They ap-
ply to the medium through which the evidence is submitted
to the jury, but not to the *legality* of the testimony itself;
for it often happens, the interrogatories may be wholly unex-
ceptionable, yet the witness may embrace in his answers tes-
timony wholly illegal, and in such case, "it is the duty of
the court to protect the jury against the admissibility of ille-
gal testimony, no matter through what medium it is offered."
See Wall v. Williamson, 11 Ala. Rep. 826, 834.

Applying the principles settled by these adjudicated cases
(and which we regard ·as recognizing the correct rules of
practice) to the exceptions before us, we think the court be-
low very properly refused to allow the motion to exclude
"the latter part of the answer of John De Winthook to the
fourth interrogatory," and the motion "to exclude so much
of the answer to the fifth interrogatory as was matter of opin-
ion."  These motions, as well as the proposal "to exclude
all, and every part of the testimony which was offered by
the plaintiffs (below) showing their credit was impaired by
suing out the attachment," were *too* general, vague and in-
definite,—imposing upon the court the burthen which be-

longed to the counsel, of sifting and scrutinizing the proof, to ascertain what portions came within the scope of the exceptions. The general objection made to the interrogatories propounded to the witness Battle, "to all and every interrogatory inquiring of specific damage or loss sustained by plaintiffs, and to all answers on that subject, and to all opinions of the witness," falls within the same category, and the court below was not bound to regard it, for the reasons above stated. The foregoing are the only objections from the investigations of which we consider ourselves relieved,—and we turn to those which are properly presented.

In this connection, we may as well dispose of the question raised by the counsel for the plaintiff in error as to the sufficiency of the interrogatories propounded to the witness Bates. We do not regard them as obnoxious to the objection of being leading. The witness is asked "if he has knowledge of the mercantile business of the plaintiff in the city of Montgomery, to state the nature, character, and extent of the business." Also, "that if he has knowledge of the levy of the attachment on the goods, wares and merchandise of the said plaintiffs, about the first of January, 1845, to state the value of the goods at that time, and his means of knowing," &c. The remaining question requires him "to state fully and accurately the situation and business of the plaintiffs before and after the levy of the attachment, and if any damage resulted to the plaintiffs by reason of the levy within his knowledge up to the 15th of April, 1845, to state particularly how, and in what manner the injury accrued, its extent, and the witness's means of knowing," &c. Leading questions are such as suggest to the witness the answer desired. 1 Greenl. Ev. 506, § 434. Such is not the form of these, but they call the attention of the witness to the subject matter, and, limiting his inquiry within particular periods, very properly elicit his information concerning it. Every question may be said in some sense to be leading, and it would be impossible to lay down any exclusive peremptory rule on the subject. The due administration of justice requires that much discretion must be left to the court trying the cause, to be exercised in reference to the character of the investigation, the condition and disposition of the witness, and the peculiar circumstances

attending the examination. There must be a palpable violation of some established rule of law, to justify this court in interfering with the exercise of that discretion. Blevins v. Pope & Son, 7 Ala. Rep. 371; Watson and Watson v. Anderson, 11 Ala. Rep. 43; Phil. Ev. C. & H.'s Notes, 724-5.

Before proceeding to examine particularly the legality of the proof objected to, let us determine what are the legitimate sources of damage to the plaintiffs below, resulting from the act complained of. The statute which we have above quoted, entitles them "to recover *any* damage they may have sustained," but we must construe this to mean such damage as is the *natural and proximate* consequence of the *tortious* act. The cases relied upon by the elementary writers, as affording the best exposition of the rule, are Ashley v. Harrison, 1 Esp. Rep. 48, and Vickars v. Wilcocks, 8 East, 1. In the former case, the defendant had libelled a performer at a place of public entertainment, in consequence of which she refused to sing: Held, that the diminution of the receipts of the owner of the house, in consequence of such refusal, furnished no ground of damage. So, in the other case, where the plaintiff sued for words charging him with cutting his employer's cordage, in consequence of which his employer discharged him from his service. It appeared at the trial, that the term for which the plaintiff had been engaged, had not expired when he was discharged. *Lord Ellenborough, C. J.* said, "the special damage must be the *legal* and *natural* consequence of the words spoken, otherwise it did not sustain the declaration. There, the master's act was an illegal consequence, a mere wrongful act, for which defendant was no more responsible than if, in consequence of the words, other persons had assembled and seized the plaintiff and thrown him into a horse-pond, by way of punishment for his supposed transgression." Sedgwick on Damages, 74-5; 2 Greenl. Ev. 210, § 256; Dryo v. Wagoner, 19 Johns. Rep. 241; 2 Starkie on Slander, 64-5.

The action here is by a mercantile firm, composed of three individuals, for injury done to their joint business, in which they were engaged as partners. The injury complained of should not only be, the natural, proximate, legal result, or consequence of the wronful act, as we have shown above,

Donnell v. Jones, et al.

but must affect the *joint* business, or trade of the partnership, and injury to the private feelings of the individual partners, is clearly not the proper subject of inquiry in this suit; such was the decision of the court in the case of Haythorn v. Lawson, 3 Car. & Pa. 190, and is sustained by the elementary writers. Coll. on Part. 402-3; Story on Par. 368, § 257; Carey on Par. 94. What *joint* injury should be considered as the natural and proximate consequence of wrongfully and maliciously suing out the attachment, upon the ground that the plaintiffs in the court below were about fraudulently disposing of their property, and the seizure and levy upon their goods? It is most obvious that no step could be more effectual, or better calculated to ruin the reputation of the firm, to prostrate its credit, and injure the joint business, than the act complained of. Was the estimation in which the firm was held in the community, as being honest and fair in its dealings, impaired? Was their joint credit injuriously affected? Was their business stopped, and their merchandize injured, and sales prevented? All these we regard as proper subjects of inquiry by the jury, and as constituting legitimate sources of damage. The counsel for the plaintiff in error insist, that much of the proof was of special damage, not warranted by the averments in the declaration. The distinction between general damages, or such as necessarily results, and as the law implies from the wrongful act complained of, and particular or special damage, being such as really took place, and are not implied by law, requires that the plaintiffs, if they seek a recovery for such particular injury, should notify the defendant, by appropriate special averments in their declaration, so that he may not be taken on surprise at the trial. 1 Chit. Pl. 195-6; Ib. 399. In the case at bar, the declaration is good without the averment of special damage, as the law implies nominal damages from the act complained of, but this does not authorize proof of special damage, and it is clear that no averment of particular damage, resulting from the loss of reputation, credit or business, or of the withdrawal of particular customers, is contained in it, so that all proof of such loss, if properly objected to, was improperly received in the court below. See forms averring special damage, 2 Chit. Pl. 641, *et seq.* See also,

Hartley v. Herring, 8 T. Rep. 131. In the latter case, Lord Kenyon, C. J., said, "where a plaintiff brings an action of slander, by which he lost his customers in trade, he ought in his declaration to state the names of those customers, in order that the defendant may be enabled to meet the charge, if false." Hunt v. Jones, Cro. Jac. 499; 1 Roll. Abr. 58; Deforest v. Leete, 16 Johns. 122, Platt, J.

Having ascertained what sources of damage constitute the proper subjects of inquiry, and the restrictions which must be imposed upon the admission of evidence of special damage by reason of the general averments in the declaration, we turn to the objections in the order propored.

We are constrained to regard a portion of the proof which was allowed by the circuit court against the objection of the plaintiff in error, as mere matter of opinion, and without noticing the many exceptions taken to the proof upon this ground, we may sufficiently illustrate our view of the rule upon this subject by recurring to the testimony of one of the witnesses, who states, "that from his acquaintance with the business of the plaintiffs, the issuing and levying the attachment had the effect of destroying their credit and standing as merchants, and preventing them from carrying on their business, *and forcing them into an assignment.*" The general rule requires, that witnesses should depose only to *facts,* and such facts too as come within their knowledge. The expression of opinions, the belief of the witness, or deductions from the facts, however honestly made, are not proper evidence as coming from the witness; and when such deductions are made by the witness, the prerogative of the jury is invaded. It is their province to combine and compare the facts—to trace the connection between them—to deduce conclusions respecting them, and to form a correct judgment upon them. This general rule has an exception, extending to individuals whose knowledge and experience in some particular avocation in which they have been engagen, is presumed to be greater than that of ordinary men, and whose judgment and opiniuns upon matters coming within the scope of their particular employment, and with which they are familiar, are allowed to go to the jury. It is a mistake upon the one hand, that the assignment made by the plaintiffs be-

Donnell v. Jones, et al.

low, so soon after the issuance of the attachment, was but a consummation of their previous determination, and which determination caused the attachment to be issued. On the other, it is contended the assignment and consequent loss from a forced sale of the goods, &c., under it, were the effects of the attachment. Now this issue was a matter peculiarly coming within the province of the jury. The opinion of the witness, that the attachment forced the party to make the assignment, is substituted for the judgment of the jury. We say *opinion*, for it cannot in the nature of things, amount to a higher grade of testimony. There is no necessary connection between the attachment and the assignment. That the issuance of the one may have rendered the execution of the other practicable, may be very true, but that as a moral cause, it operated upon the minds of the defendants in error, so powerfully as to deprive them of their free agency, and force them to its execution, must be matter of opinion—a conclusion from the facts which the jury are presumed as competent to draw as the witness, and of which they are the exclusive judges. Such opinions do not fall within the exception to the general rule. See the authorities collected in 2 Phil. Ev. C. & H's Notes, 750, n. 529; Lincoln v. The Saratoga and Schenectady Rail Road Company, 23 Wend. 425, Nelson, C. J.; 1 Greenl. Ev. 515, § 440; Andrews & Bros. v. Jones, 10 Ala. 460, and cases there cited.

In Herrick v. Lapham, 10 Johns. Rep. 281, the court say, "to call upon witnesses to say whether a party has not sustained, or suffered a material injury by reason of the slander, is asking their opinion only, and putting them in the place of the jury, to draw conclusions from the facts proved in the cause." Now in the case before us, many objections of a kindred character to the one we have above noticed, we regard as improperly overruled. One witness testified, "that even if the plaintiffs below had promptly paid up the debts for which the attachment issued, still, as it issued based on a charge of fraud, such charge would greatly injure and impair the credit of plaintiffs." Another, "that the plaintiffs were *seriously damaged* by the issuance and levy of the attachment, both in character and business." These, and the

like, are obviously the opinions of the witnesses, and should have been excluded.

The objections made to the depositions of merchants in the city of New York, at which place the plaintiffs below were in the habit of dealing, proving the basis of mercantile credit there, and the destruction of the credit of said plaintiffs, we think were properly overruled. These were facts proper for the jury, that they might ascertain the extent of the injury, and whether the foundation of their credit was not destroyed by the act complained of. But while it was proper, under the general averments in the declaration, to show as sources of injury the *general* loss of credit and mercantile character of the firm, it was not permissible to prove the loss of any *particular* customer. The proof made by the witness, Bates, "that on account of the upright, honest character of the members of the firm, and the business capacity of Mr. Jackson, he had trusted the firm, and would have continued to give them credit, until he heard they were accused of fraud," we think objectionable, as proof of particular injury resulting from what some third person stated to the witness. 2 Story on Slander, 64; Hartley v. Herring, 8 T. Rep. 130; Dickinson v. Boyle, 17 Pick. Rep. 78; Deforest v. Leete, 16 John. R. 122, 128.

Upon the same principle should have been extended the proof offered to be made by the deposition of the witness, Phillips, " that planters and others with whom the plaintiffs below had dealings in cotton, and who would have readily sold their crops to the plaintiffs on their individual credit, after they heard of the issuance of the attachment, would not sell them cotton," &c. If this was the opinion of the witness, we have seen it was inadmissible. If his knowledge, however, was derived from the persons who had withdrawn their credit from the firm, then the proof was but hearsay, and in either view, should have been excluded. The persons themselves are the best exponents of the motives and reasons which prompted them to trade, or withdraw their credit. See Johnson v. Robison and wife, 8 Porter's Rep. 486, 490.

The loss of the mercantile character and credit of the firm,

is a matter which may be proved by reputation, and such proof was properly allowed. By character, in this connection, we mean the generally received opinion in the community respecting the solvency of the firm—the probity and punctuality with which it discharged its obligations, and the efficiency with which its affairs are managed. Credit, which is usually the result of those qualities and capacities we have named, may be defined, the ability to borrow money or obtain goods in virtue of the opinion conceived by the lender, or seller, that the party will repay. The loss of this credit, whether it be based upon actual capital, or upon that which is justly esteemed by the witnesses, a surer guaranty of repayment, " honesty, integrity and business capacity," may well, in this action, be compensated, and evidence showing the state of the public mind, in respect to the character and credit of the firm was unexceptionable. See Lawson v. Orear, 7 Ala. 784; Massey v. Walker, 10 Ib. 288.

The views we have expressed, embrace, we believe, all the points raised in the argument upon the record, and are also decisive of the questions made upon the charges refused, as well as those given by the court.

As we have seen that credit may exist aside from capital, based as it may be upon the integrity and business capacity of the firm, the court perhaps charged too favorably for the plaintiff in error, in making the right of defendants in error to recover for injury to their joint business, to depend upon the fact, whether, from the profits of the business they were engaged in, they could have extricated themselves from their insolvency. But this is not to the prejudice of the plaintiff in error.

It results too, from what we have said, that the court should have excluded the proof of the loss in the sales of the goods made under the deed of assignment. There is in the declaration no averment of this special loss, and if there were, we feel confident such loss, thus accruing, cannot be recovered in this action. It is not the proximate or natural con-

65

sequence of the attachment; and the plaintiffs may have caused it by the execution of the assignment, which required the goods to be sold. See 5 Wend. 538; 1 Esp. Rep. 48; 2 Stark. on Sl. 64, 65; 1 Smith's Leading Cases, 302-4, and authorities there cited.

For the errors we have noticed, the judgment of the circuit court is reversed, and the cause remanded.