## STOREY *vs.* UNION BANK.

[ACTION ON BILL OF EXCHANGE, BY ENDORSEE AGAINST ENDORSER.]

1. *Relevancy of evidence as tending to prove nature of one's business.*—Where the question at issue is, whether a person was engaged in the business of a private banker and exchange-broker, or was acting as a bank-agent, the relevancy of the fact that, as an abstract and general proposition, the former business is more profitable than the latter, " is, to say the least of it, open to grave question."

2. *Opinion of witness as expert.*—A witness cannot be allowed to testify, as an expert, to the abstract proposition, that it is more profitable to discount mercantile paper on private account, with borrowed money, than to act as a bank-agent.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by the Bank of Brunswick, (now the Union Bank,) a corporation chartered in Georgia, against Alonzo G. Storey; and was founded on a bill of exchange for $5,000, drawn by Allen Elston on Slough, Elston & Co., of Mobile, dated the 15th February, 1852, payable ten months after date, to the order of J. D. Elston, and endorsed by said J. D. Elston, W. L. Elston, Alonzo G. Storey, and J. S. Winter & Co. The complaint contained the common money counts; and the only plea was the general issue, with leave to give in evidence any special matter in bar of the suit. The defense mainly relied on was, that the bill was discounted by J. S. Winter & Co., who were bankers and exchange-brokers in Montgomery, in payment or renewal of other bills held by them on Slough, Elston & Co.; that the defendant was merely an accommodation endorser for said Slough, Elston & Co.; and that said bill, or the bill in renewal of which it was taken, was discounted by said J. S. Winter & Co. with the bills of the Bank of St. Marys, a corporation chartered by the legislature of Georgia, and as the agents of said bank, in violation of the statute laws of this State against foreign bank-agencies and the circulation of foreign bank-notes. The defendant introduced evidence tending to show, that J. S. Winter & Co. owned and controlled the Bank of St. Marys, issued and put in circulation its notes in this State, and acted as its agents; while the plaintiff contended, that J. S. Winter & Co. were merely private bankers and exchange-brokers, and borrowed from said bank the notes which they put in circulation. In rebuttal of the evidence introduced by defendant on this point, the court permitted the plaintiff to prove, by J. G. L. Huey and one Thomason, "who were exchange-brokers, and acquainted with the business of banking, that it was more profitable to borrow money and discount on private account than to act as agent for a bank." The admission of this evidence, to which the defendant excepted, is one of the matters now assigned as error.

JAS. B. MARTIN, and L. E. PARSONS, for the appellant, contended, that the evidence was not relevant to the issue,

and that the fact could not be proved by the opinions of experts; citing the following cases: Norman v. Wells, 17 Wendell, 141; Fish v. Dodge, 4 Denio, 311; Ramadge v. Ryan, 9 Bing. 333; Malton v. Nesbit, 1 Carr. & P. 73; Donnell v. Jones, 13 Ala. 490.

Wm. P. CHILTON, and H. W. HILLIARD, *contra.*—The evidence was relevant to rebut the presumption of agency, attempted to be raised from the frequent use by J. S. Winter & Co., of the notes of the Bank of St. Marys. To reject it as irrelevant, would be to ignore the fact that men are ordinarily governed by their own interest. Moreover, if it was irrelevant of itself, it was nevertheless good in rebuttal of the defendant's illegal evidence.—Nelson v. Iverson, 24 Ala. 9.

R. W. WALKER, J.—The fact sought to be established by the opinions of the witnesses Huey and Thomason was, that it was more profitable to borrow money and discount on private account than to act as an agent for a bank. The relevancy of this fact is, to say the least of it, open to grave question. To what (if any) weight it would be entitled, in determining the question whether J. S. Winter & Co. were acting as agents for the bank, or on their individual account, would depend materially on many other facts of which no mention is made in the record. It might require more means and better credit to borrow money from a bank, than to obtain an agency. Hence, if the person whose relation to the bank was in question, was not in a condition to borrow the money, the fact that dealing with borrowed money on private account was more profitable than an agency, would be entitled to no weight. The motives which control human conduct, differ as widely as the phases of character to be found among men. The greater profitableness of one business might attract one person, while another would prefer a different employment, of which, though the profits might not be so large, the risks would be less. The choice of a profession or occupation is so much a matter of taste and inclination, and controlled by such

an infinite variety of facts, often of a private nature, that we are not able to say that, in order to determine which one of two employments an individual was engaged in at a particular period, the mere fact that one was likely to be more profitable than the other can be considered as a circumstance relevant to the inquiry.

2. But, upon the supposition that the fact was relevant, we think the evidence which the plaintiff was allowed to introduce for the purpose of establishing it was not competent. This evidence consisted of the mere opinions of witnesses, in favor of the abstract proposition, that dealing with money on private account is more profitable than a bank-agency. It is obvious, that no general rule can be laid down, as to the amount of profit which would be realized by a person dealing with borrowed money on his individual account. It is a question, which, in this case, as in all others, would depend for its solution upon complicated facts, which are not shown to have been within the knowledge of the witnesses. Much would depend on the character and habits of the person undertaking the business; much also on the terms on which, and the amounts in which money could be borrowed; and these would be regulated by the fluctuating condition of the financial world, and by the habits, means, and credit of the borrower. It is plain, too, that the inquiry could not be answered without a knowledge of the terms on which the borrowed money could be invested, the amount that could be profitably used, and the extent of losses likely to be sustained by reason of insolvencies or other causes; and these several matters would, in their turn, depend on such a number of constantly changing facts, as to render impossible the establishment of any general standard or fixed rule by which the probable profits of the business could be determined. On the other hand, the profits of a bank-agency would depend, in some degree, on the mode of compensation—whether by fixed salary, or by commissions; if by commissions, the *percentage* allowed, and the amount of money employed; and this, again, would be determined by the character and capacity of the agent, the location of the agency, the absence or presence of rival·

agencies or other banking institutions, the general condition of business, and a multitude of other facts, which no human foresight could anticipate. Our opinion is that, in matters of this sort, no general rule can exist, capable of affording a test by which to determine which one of two or more employments will yield the largest profit. This was, therefore, not a case for the application of the rule which allows *experts* to give their opinions upon questions of science or trade.—Norman v. Wells, 17 Wendell, 141, 161; Donnell v. Jones, 13 Ala. 490.

The other questions presented by this record may not arise upon another trial, and we will not consider them.

Judgment reversed, and cause remanded.

A. J. WALKER, C. J., not sitting.