## RELIABLE MUT. HAIL INS. CO. v. ROGERS.

No. 4977—Opinion Filed Jan. 4, 1916.

Rehearing Denied Nov. 14, 1916.

(160 Pac. 914.)

1. **Attachment — Wrongful Attachment — Actions—Pleading.**

In a petition to recover damages for the wrongful issue of an attachment, it is not necessary to aver the want of probable cause for the suing out of the attachment or a determination of the action in which the attachment was issued.

2. **Same.**

Actual damages only for mere wrongful attachment may be recovered in an action against the plaintiff therein, independent of the undertaking required by section 4070, Laws 1893 (section 4814, Rev. Laws 1910), and without allegation or proof that the same was sued out maliciously or without probable cause.

3. **Same.**

If exemplary or punitive damages are sought in an action for wrongful attachment against the party instituting the attachment proceedings, both malice and want of probable cause must be alleged and proved.

(Syllabus by Bowles, C.)

Error from District Court, Kingfisher County; James B. Cullison, Judge.

Action by Lizzie Rogers, individually and as special administratrix of the estate of John Rogers, deceased, against the Reliable Mutual Hail Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed on condition.

Parker & Simons and F. L. Boynton, for plaintiff in error.

Bradley & Bradley, for defendant in error.

Opinion by BOWLES, C. This is an action commenced by defendants in error [that is, Lizzie Rogers and her husband, since deceased] against the plaintiff in error to recover damages for wrongful attachment. A complete history of the case is as follows:

Plaintiff in error, defendant below, instituted proceedings against defendants in error, plaintiffs below, jointly as husband and wife, to recover judgment upon a promissory note signed by the husband alone. Attachment proceedings were caused to issue, and a crop of cotton growing upon the homestead of defendants in error was attached. Garnishment proceedings were also instituted against defendants in error jointly, and money was garnished in the name of the husband. The homestead was in the name of the wife. It seems that no proceedings were taken to dissolve the attachment. The main case, however, was determined after two trials in favor of defendants in error. Plaintiff in error appealed to the district court, where a trial was had, and again judgment was rendered for defendants in error. After the termination of the suit in the district court of Kingfisher county, the action before us was instituted in the district court of Kingfisher county for wrongful attachment, and defendants in error recovered a judgment, hence this appeal.

The errors complained of by plaintiff in error, and relied upon for a reversal of this case, will be considered in the order referred to in plaintiff in error's brief. Plaintiff in error complains of instruction No. 13, given by the court, wherein he instructed the jury in substance that if the attachment proceedings were wrongful, the defendants would be entitled to recover such damages as were the proximate result of such wrongful attachment, and also told the jury in the same instruction that the want of probable cause was not a necessary element in determining whether or not the attachment proceedings were wrongful.

From our investigation of plaintiffs' amended petition, we find that they predicated their cause of action upon the wrongfulness of the attachment proceedings. It is true that an allegation appears in the amended petition that the affidavit for attachment was sworn to without any probable cause therefor. The attachment affidavit, however, was not the only basis of the suit. The suit is based upon the wrongful attachment, including all the proceedings which brought about and caused an unlawful and wrongful taking and converting of the property of defendants in error, and the petition, taken as a whole, states a cause of action for wrongful attachment. The court, however, gave instructions which would lead us to believe that he considered the case one for malicious prosecution; consequently the instruction complained of squarely contradicts the instruction given by the court upon the theory that the cause of action was one for malicious prosecution; in other words, he tells the jury in instruction No. 1:

"In order for the plaintiff to recover it is necessary for the plaintiff to prove each and every one of the following four things which are essential to sustaining their cause of action as set forth in the petition: First, that the attachment and garnishment process was sworn out and levied on the plaintiffs' property and money by the defendant; second, that this was done with malice; third, that it has been legally terminated in favor of the plaintiff; fourth, that the institution of these proceedings was without probable cause."

This can be accounted for upon one hypothesis alone: The vigilant and determined effort on the part of the plaintiff in error to transform a case of wrongful attachment into one for malicious prosecution. In a suit for malicious prosecution, four elements must combine: The termination of the main case, damages, malice, and want of probable cause. In a suit for wrongful attachment it was only necessary to allege that the attachment was wrongful and the resulting damages. In the event exemplary or punitive damages are sought, malice and want of probable cause are necessary allegations.

It is strenuously insisted by counsel for plaintiff in error, and not without authority, that when an attachment is sued out and levied upon the property of the defendant in an action, and the plaintiff therein has failed to maintain his action, two remedies, and only two, are open to the attachment defendant; he may sue upon the undertaking on attachment, or maintain an action for malicious prosecution. We cannot agree with this contention. The dissolution of the attachment proceedings gives the right of action, and it is not necessary to wait until the termination of the main action before instituting proceedings for redress. This being the law, upon the dissolution of the attachment, the aggrieved party may elect to sue upon the bond or waive the bond and sue the attaching plaintiff for wrongful attachment. If the proceedings were malicious and instituted without probable cause, the defendant can await the termination of the main action and sue for malicious prosecution.

Justice Brewer, in McLaughlin v. Davis, 14 Kan. 168, speaking of the defendant's right to sue for wrongful attachment and to sue attaching plaintiff, uses this language:

"It is insisted that 'the petition should have averred want of probable cause for the suing out of the order, and the termination of the attachment suit.' Neither of these is necessary. A party is entitled to an attachment only when certain facts exist. * * * If the facts do not exist, the attachment is wrongfully issued, and the party causing it to issue is liable for all the damages actually sustained. Nor is it necessary in such case to set out or sue on the undertaking. If the surety in the undertaking is liable, a fortiori the principal is, and that, not by reason of the undertaking, but of the act for which it was given. Nor need the determination of the attachment suit be averred. The attachment is but ancillary to the action in which it was issued. It stands or falls without affecting the progress or termination of" the main case. "A party may have a just cause of action, but no right to an attachment; nor can he justify a wrongful attachment by a valid action."

This court, in Overton v. Sigmon Furn. Co., 50 Okla. 531, 151 Pac. 215, has held:

"An action at common law may be maintained for wrongful attachment against the plaintiff therein when the attachment is sued out maliciously and without probable cause, in which case, if the pleadings and evidence warrant it, both actual and punitive or exemplary damages may be recovered."

"In such case, by reason of section 4070, Stat. 1893 (section 4814, Rev. Laws 1910), actual damages only may be recovered for the mere wrongfulness of the attachment and without regard to either malice or probable cause."

"Actual damages only for mere wrongful attachment may be recovered in an action against the plaintiff therein independent of the undertaking required by section 4070, Stat. 1893 (section 4814, Rev. Laws 1910), and without allegation or proof that the same was sued out maliciously or without probable cause."

We therefore conclude that the instruction complained of stated the law correctly, and that the giving of the same was not error. In coming to this conclusion we have thoroughly considered the authorities cited by plaintiff in error sustaining the opposite view, but we see no reason why we should depart from the former holdings of this court.

The instructions of the court, however, predicated upon the theory that the action was one for malicious prosecution were erroneous, but plaintiff in error is not in a position to complain of the giving of them, because they were given at the request of plaintiff in error, and, under our theory of the case, these instructions, if followed by the jury, had the effect to add an additional burden to the plaintiffs below, which could in no wise adversely affect plaintiff in error, but would militate in its favor.

Plaintiff in error next complains that the cause of action of defendant in error was barred by the statute of limitations, citing our statute that:

"Actions on a foreign judgment, libel, slander, assault, battery, malicious prosecution, and false imprisonment, must be instituted within one year after the cause of action accrues."

This being an action for wrongful attachment and not for malicious prosecution, the statute of limitations would not run in any event for a period of three years, and three years not having elapsed from the termination of the attachment until the suit for wrongful attachment was instituted in the district court, the statute has not run, and the contention of plaintiff in error in this regard is without avail. This being the law, a construction of section 5397, Rev. Laws 1910, pertaining to appeals from justice court, is unnecessary in determining whether or not, by virtue of the appeal, the attachment proceedings were taken to the district court. Under the evidence and facts adduced at the trial of the case at bar, plaintiff in error acts upon the assumption, when the appeal was taken in the main case, the attachment proceedings were also appealed. The constable, having charge of the property, continued to retain it until the case was disposed of in the district court, and no instructions were received by him from the justice of the peace or plaintiff in error here to release said property; the damages suffered and the expense incurred in defending the attachment were the same and the liability of plaintiff in error unchanged.

Plaintiff in error also urges that the court erred in permitting evidence to go to the jury relative to the damage to the cotton growing upon the homestead of defendants in error; said homestead being in the name of the wife. That plaintiffs below could not sue jointly for damages to the cotton, even though the attachment was wrongful. Under our law, the homestead is for the benefit of the family, and the husband, in this instance, being a member of the family, and having possession of the cotton by reason of his homestead relation, and the fact that he had produced it, as shown by the evidence, inclines us to the opinion that he had such a special interest, along with his wife, as to permit him to be joined with her to recover for the damages complained of.

Instructions numbered 9, 10, 11, 12, 13, 14, and 16, given by the court, are claimed to be erroneous and prejudicial to the rights of the plaintiff in error. Instructions Nos. 9, 11, and 12 were given by the court, we imagine, to counteract the theory maintained by the defendant in the court below that the appeal from the justice of the peace having been erroneously taken to the district court, the district court having no jurisdiction of appeals from justices of the peace at the time, was void, and the plaintiff in error could not be held for damages accruing to the defendant in error after the matter had been appealed to the district court, and the contention of plaintiff in error that the suit for wrongful attachment must be predicated upon the bond given in the attachment proceedings in the first instance.

Plaintiff in error, having invoked the jurisdiction of the district court, and caused a trial to be had therein, is estopped from denying the liability for injuries done by reason of its wrongful attachment. Instructions of this character are often necessary, that the jury may be advised in such a way as to give them a correct understanding of the law of the case, and in order to prevent them from giving an improper effect to the evidence and argument of counsel. In the same connection, instruction No. 10 advises the jury of the admitted facts in the case.

We fail to see how this instruction could operate to prejudice the rights of plaintiff in error.

Plaintiff in error also complains of instruction No. 16, which reads as follows:

"You are instructed that attorneys' fees and expenses, incident to the trial of said former proceedings in attachment, the fair, reasonable value of the time expended by reason of the same and all property lost or destroyed by reason of the same, if wrongful, and while such property was under attachment, are elements of actual damages; in the event you find that the defendant company maliciously caused the issuance, levy, and maintenance of said attachment in said former proceedings, and that the plaintiffs herein suffered a loss of credit by reason of such malicious conduct on the part of the defendant company, you will allow the plaintiffs damages for such loss of credit."

In order, however, to discuss instruction No. 16, it will be necessary to understand instruction No. 15, which reads as follows:

"You are also instructed that if you find that the order of attachment and said attachment proceedings were sued out or maintained maliciously and without probable cause therefor, you may also award to the plaintiff such exemplary damages as may be just and reasonable, in addition to such actual damages as you may allow them under the instructions heretofore given you by the court. Exemplary damages, also called vindictive or punitive damages, are given by way of example and by way of punishing the defendant."

For wrongful attachment, plaintiffs below were entitled to have the jury instructed, as a measure of damages, that they were entitled to attorneys' fees, loss of time, loss of credit, and the reasonable value of the property destroyed or taken under the attachment and of which they were ultimately deprived. The instruction complained of tells the jury that before it could consider loss of credit, they must find that the prosecution was carried on maliciously. This instruction was wrong, as to the necessity of showing malice in order to recover for loss of credit and in not admonishing the jury that it could not consider remote, speculative, or conjectural damages; following Tootle et al. v. Kent et al., 12 Okla. 674, 73 Pac. 310. But the instructions militated to the advantage of plaintiff in error, and it will not be heard to complain of the error here. Instruction No. 15 was a correct statement of the law, so far as exemplary or punitive damages are concerned; the better line of decisions holding that even in a suit for wrongful attachment, before punitive or exemplary damages can be claimed, both malice and

want of probable cause must not only be proven, but pleaded.

The theory of instruction No. 16, so far as the item of loss of credit is concerned, is based upon malice. The jury was instructed that it must first find malice before the loss of credit can be taken into consideration. We have examined the evidence and fail to find where the defendant suffered any loss of credit other than in her own imagination, and we do not believe the instruction was proper, unless there had been some evidence upon which to base it. However, the instruction seems to have been given upon the theory that unless there was malice and lack of probable cause, loss of credit could not be taken into consideration; this being true, we are strongly inclined to the opinion that both the court and jury had in mind that loss of credit could only be considered in awarding punitive or exemplary damages.

The jury was directed to specify the amount of exemplary and punitive damages in its verdict. This they did, and returned a verdict in the sum of $280 for punitive damages, and we believe the punitive damages, as returned by the jury, were based upon the item of damages for loss of credit. There being no evidence before the jury that would justify the court in submitting to them the item of loss of credit as an element of damages, the $280 judgment for punitive damages should be remitted. Complaint is made on the part of counsel for plaintiff in error that counsel for defendant in error in the court below, throughout the entire trial and proceedings, were insinuating, captious, and, by a series of questions, both in direct and cross-examination, were endeavoring to prejudice the jury against the plaintiff in error because it was an insurance company and a corporation.

A reading of the record convinces us of this truth, and such proceedings should not be countenanced, and the trial judge, when such conduct is called to his attention, should be prompt in admonishing counsel of their duty in that regard; yet we cannot say in this case that the jury was influenced in its verdict on account of such conduct.

Upon the whole we believe that the verdict of the jury, with the modification made in this opinion, does substantial justice. That the attachment in the first instance was wrongful, cannot be gainsaid. The verdict of $920 as actual damages suffered by the defendants in error on account of the wrongful attachment included the expense of counsel, witnesses, loss of time for two trials before the justice of the peace of Hennessy,

township, and the trial in the district court of Kingfisher county. The defendants in error were required to travel long distances and appear in court several times. In addition to this, 20 acres of cotton was attached, and, according to all of the evidence, entirely destroyed. The testimony of several witnesses, qualified to give evidence of the value of the cotton destroyed, estimated the same to be worth from $500 to $700, after paying the expenses of picking and hauling to market. We believe the judgment, under the evidence, was no more than a fair and reasonable estimate of the actual damages sustained.

Finding no prejudicial error in the record, except as indicated, we recommend that upon the defendants in error agreeing to remit $280 of the judgment, the cause be in all things affirmed. In the event defendants in error refuse or fail to remit the said $280, we recommend that the cause be reversed and remanded, with directions to grant a new trial.

By the Court: It is so ordered.