**Roland PINSKY; Jennie Pinsky and Eileen Fedowitz, Plaintiffs,**

**Brian K. Doehr, Plaintiff–Appellant,**

**v.**

**Robert K. DUNCAN and Joseph Golden Insurance Agency, Defendants,**

**John F. Di Giovanni, Defendant–Appellee.**
**No. 9, Docket 94–7394.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1995.
Decided March 22, 1996.

Joanne S. Faulkner, New Haven, CT, for Plaintiff–Appellant.

Jeremiah S. Gutman, New York City (Jayne F. Monahan, Levy, Gutman, Goldberg & Kaplan, New York City, of counsel), for Defendant–Appellee.

Before: OAKES, MINER and MAHONEY, Circuit Judges.

Judge OAKES concurs in a separate opinion.

MINER, Circuit Judge:

Plaintiff-appellant Brian K. Doehr appeals from a judgment entered in the United States District Court for the District of Connecticut (Eginton, J.), denying his motions for damages and attorney's fees in a civil rights action brought pursuant to 42 U.S.C. § 1983 against defendant-appellee John F. Di Giovanni. These orders followed a determination that Di Giovanni had violated Doehr's due process rights by attaching real property under the Connecticut prejudgment remedy statute, which permitted the attachment without notice or hearing. The district court declined to award damages in the absence of evidence that Di Giovanni knew or should have known the statute was unconstitutional or that he acted in reckless disregard of Doehr's constitutional rights. The district court denied attorney's fees for time expended on the damages issue because Doehr did not prevail on that issue. Moreover, the court found no basis for an award of fees under Fed.R.Civ.P. 11 or 28 U.S.C. § 1927.

## BACKGROUND

In March of 1988, Doehr and Di Giovanni engaged in an altercation resulting in personal injuries to Di Giovanni. Shortly after the altercation, Di Giovanni commenced an action against Doehr in the Connecticut Superior Court to recover damages for assault and battery. Sometime later, Di Giovanni amended his complaint in that action to assert a claim in negligence. In 1992, a jury verdict in the sum of $5,600.00 was returned in favor of Di Giovanni on his negligence claim, the jury having apportioned forty percent responsibility against him. Because of the collateral source rule, Di Giovanni actually recovered the sum of $3,422.34 plus costs in his lawsuit.

At the inception of the action, and prior to the service of process on Doehr, Di Giovanni was granted the right to attach real property owned by Doehr in Meriden, Connecticut for the purpose of securing any judgment he might obtain. It appears that the real property in question was a residential dwelling owned by Doehr and his wife. The Connecticut court allowed the issuance of the attachment without notice, hearing or bond under the provisions of Conn.Gen.Stat. § 52–278e, which provided in part as follows:

> The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing as provided in sections 52–278c and 52–278d upon verification by oath of the plaintiff or of some competent affiant, that there is probable cause to sustain the validity of the plaintiff's claim and (1) that the prejudgment remedy requested is for an attachment of real property . . . .

The prejudgment remedy of attachment was authorized by the Connecticut court, in accordance with the foregoing statute, to the value of $75,000.00 based on the *ex parte* application of Di Giovanni, who stated in his affidavit in support of the application that he "was willfully, wantonly and maliciously assaulted by the defendant, Brian K. Doehr." Included in the affidavit was an allegation that the "assault and battery broke my left wrist and further caused an ecchymosis to my right eye, as well as other injuries to my head, limbs and body."

In August of 1988, before the conclusion of the action in the Connecticut Superior Court, Doehr and others commenced the action giving rise to this appeal, pursuant to 42 U.S.C. § 1983, in the United States District Court for the District of Connecticut. In the complaint, the plaintiffs alleged that

> [e]ach plaintiff has had his or her real property attached, without prior notice and without a prior opportunity to be heard, pursuant to section 52–278e(1), which allows a prejudgment remedy to be issued without bond, and without any showing of extraordinary circumstances … merely because the proposed defendant owns real property.

The Complaint included allegations of deprivation of property without due process by Di Giovanni and others, and the state action necessary to sustain a § 1983 claim was pleaded as follows: "In obtaining ex parte attachments of real property, defendants act jointly with state officials: a Judge of the Superior Court, without whose order no attachment could be obtained, and a sheriff, who serves the attachment papers." In their prayer for relief, plaintiffs sought "permanent injunctive relief … enjoining defendants from attaching a consumer's real property unless they show … special circumstances," and "a declaratory judgment that defendants have violated the due process and equal protection rights of the plaintiffs." Plaintiffs also sought actual damages, punitive damages and costs, including attorney's fees. The district court granted summary judgment in favor of Doehr and the other defendants, finding that the challenged

statute was consistent with the due process requirements of the federal Constitution:

> Viewed as a whole, Section 52–278e(a)(1) comports with due process. The statute provides for judicial supervision of the process in that it requires the prejudgment remedy to be issued by a judge…. A defendant whose property has been attached can require the plaintiff to show probable cause to sustain the prejudgment remedy in a prompt post-seizure hearing…. The temporary and minor prehearing impairment of a defendant's property, when coupled with the purpose served by such an attachment, suggests that the fact that the statute does not provide for the filing of a bond prior to the attachment is unobjectionable.

*Pinsky v. Duncan,* 716 F.Supp. 58, 60 (D.Conn.1989).

We reversed on appeal, stating in the principal opinion "that Conn.Gen.Stat. § 52–278e(a)(1) violates the requirements of due process because (1) it permits the issuance of *ex parte* attachments in the absence of extraordinary circumstances, and (2) it fails to require the plaintiff to post a bond or other security before obtaining the attachment." *Pinsky v. Duncan,* 898 F.2d 852, 858 (2d Cir.1990). The concurring opinion did not find the lack of a requirement for a bond or other security to be a constitutional flaw. *Id.* (Mahoney, J., concurring). The opinion to reverse included the following:

> Despite the highly error-prone nature of Connecticut's pre-attachment procedure, Di Giovanni and the state insist that the private interest at stake is so minuscule that a prior hearing is not constitutionally required. We are unpersuaded by this argument. An attachment can have a substantial impact on a landowner's ability to sell his property, secure a loan, or obtain credit. Given a particularly unlucky set of circumstances, even a temporary attachment can lead to foreclosure proceedings against the homeowner. In any event, the individual's interest in a prior hearing certainly outweighs the state's interest in postponing the hearing until after attach-

ment, which, in the absence of unusual circumstances, is practically nil.

*Id.* at 856 (citation omitted).

The Supreme Court granted certiorari, affirmed and remanded to us for further proceedings consistent with its opinion. *Connecticut v. Doehr,* 501 U.S. 1, 24, 111 S.Ct. 2105, 2119, 115 L.Ed.2d 1 (1991). The Court held that the Due Process Clause of the Fourteenth Amendment was not satisfied by a state statute that permitted prejudgment attachment of real property without prior notice or hearing. *Id.* Four members of the Court concluded that due process also required that a bond be posted, although a bond would not eliminate the need for a pre-attachment hearing or a showing of exigent circumstances. *Id.* at 23, 111 S.Ct. at 2118–19. The opinion for the majority stated:

> The plaintiff had no existing interest in Doehr's real estate when he sought the attachment. His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action. Yet there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected. Absent such allegations, however, the plaintiff's interest in attaching the property does not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery.

*Id.* at 16, 111 S.Ct. at 2115 (citations omitted). The Court remanded the case to us for further proceedings consistent with its opinion. *Id.* at 24, 111 S.Ct. at 2119. By order entered on August 2, 1991, we remanded to the district court for further proceedings consistent with the Supreme Court opinion.

On December 4, 1992, the district court vacated its original judgment, granted summary judgment in favor of plaintiff on the constitutional deprivation issue, and directed the filing of a motion for damages. Doehr subsequently filed the motion as well as a supplemental motion for additional damages. Di Giovanni submitted papers in opposition and also cross-moved to dismiss Doehr's complaint insofar as it sought damages and attorney's fees. On August 27, 1993, the parties entered into a stipulation submitting the damages issue for the court's determination on the basis of an affidavit that Doehr had submitted in connection with his motions. The stipulation also noted the purchase price of Doehr's property, and that Doehr's attorney had made three requests for release from the attachment in 1990 and three requests in 1991. The release ultimately was filed on July 30, 1991.

In a Ruling filed on March 1, 1994, the district court denied the motions for damages, holding that

> there is no evidence that defendant knew or should have known that Connecticut's prejudgment attachment statute was unconstitutional, or that he acted with reckless disregard of plaintiff's constitutional rights. Plaintiff also seeks damages for defendant's alleged wrongful attachment and for defendant's tardy release of the attachment. The use or abuse of an ex parte attachment statute does not present a valid cause of action under § 1983.

Doehr moved for reconsideration and the district court, by memorandum endorsement filed on March 11, 1994, adhered to its previous determination. Thereafter, Doehr applied for attorney's fees, submitting an affidavit regarding the time spent by his attorney and her experience in consumer law matters. The district court filed an opinion on August 23, 1994 denying attorney's fees. The court first noted that it had granted a motion for interim attorney's fees in August of 1990 in the amount of $14,480. The district court ruled that Doehr did not succeed on the issue of damages, however, and was not entitled to be paid for services in that connection. Although Doehr's attorney contended that Di Giovanni filed a number of motions that were unreasonable because they urged the district court to violate the Supreme Court mandate, the district court did not see it that way: "Defendant's motions primarily

sought dismissal or judgment against plaintiff on the issue of damages. Plaintiff did not succeed on this issue. Accordingly, the court finds that defendant's motions were objectively reasonable under the circumstances and did not multiply the proceedings before this court." This appeal challenges the rulings of the district court on both damages and attorney's fees.

## DISCUSSION

### I. *Damages for the Deprivation*

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court held that a private party who attaches a debtor's assets pursuant to a state's attachment statute would be subject to § 1983 liability if the statute was found to be unconstitutional. According to *Lugar*, the "color of state law" requirement was satisfied because the private party, by invoking the assistance of state officers to effect the attachment, became a "willful participant in joint activity with the State or its agents." *Id.* at 941, 102 S.Ct. at 2756 (quotations omitted). The *Lugar* court did not reach the issue of qualified immunity for private participants who act jointly with state agents to deprive constitutional rights. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court had established an objective standard for the qualified immunity that would be accorded to government officials. It held that such officials would be shielded in the performance of discretionary functions from "liability for civil damages insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

In *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), the Court answered "no" to the question "[w]hether private persons, who conspire with state officials to violate constitutional rights, have available the good faith immunity applicable to public officials." *Id.* at 168–69, 112 S.Ct. at 1834 (quotation omitted). The Court reviewed the policy concerns that require the protection of qualified immunity for public officials and found them inapplicable to private citizens. Among these concerns are the encouragement of fearless decision-making, the recruitment of talented public servants, the vigorous exercise of public authority and the avoidance of distractions from governmental duties. *Id.* at 167, 112 S.Ct. at 1833.

In declining to extend the doctrine of immunity to private citizens because "the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension," the Court stated:

> In so holding, however, we do not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar v. Edmondson Oil Co.*, ... could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens. Because those issues are not fairly before us, however, we leave them for another day.

*Id.* at 168–69, 112 S.Ct. at 1834.

On remand, the Fifth Circuit, addressing the issues left "for another day" by reference to the concurring and dissenting opinions in the Supreme Court,

> h[e]ld that private defendants sued on the basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, *that is,* if they either knew or should have known that the statute upon which they relied was unconstitutional.

*Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir.) (emphasis supplied), *cert. denied*, —— U.S. ——, 114 S.Ct. 470, 126 L.Ed.2d 421 (1993). In the same opinion, the Fifth Circuit promulgated a seemingly different standard:

> [We] think that private defendants, at least those invoking ex parte prejudgment statutes, should not be held liable under

§ 1983 absent a showing of malice *and* evidence that they either knew or should have known of the statute's constitutional infirmity.

*Id.* at 1120 (emphasis supplied).

The Third Circuit, referring to the second standard set out by the Fifth Circuit, stated:

We are in basic agreement, but we believe "malice" in this context means a creditor's subjective appreciation that its act deprives the debtor of his constitutional right to due process.

*Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1276 (3d Cir.1994).

The Supreme Court's majority opinion in *Wyatt* did establish that § 1983 created a type of tort liability and that the most closely analogous torts were malicious prosecution and abuse of process. *Wyatt,* 504 U.S. at 164, 112 S.Ct. at 1831. "At common law, these torts provided causes of action against private defendants for unjustified harm arising out of the misuse of governmental processes." *Id.* The two torts seemingly were conflated in the text cited by the Court as reflecting the common law at the time § 1983 was enacted: "The law has provided the action of malicious prosecution as a remedy for private injuries from abuse of the processes of the courts." Joel P. Bishop, *Commentaries on the Non–Contract Law* § 224, at 90 (1889). The text goes on to note the four elements necessary to establish the tort of malicious prosecution: malice, lack of probable cause, favorable termination and damage. *Id.* §§ 225–227, at 90.

A more modern text distinguishes malicious prosecution, called "wrongful civil proceedings," from abuse of process, defining the latter as "misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." W. Page Keeton et al., *Prosser and Keeton On the Law of Torts* § 121, at 897 (5th ed.1984). This text states that the abuse of process tort has but two elements: "first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding." *Id.* at 898.

As we understand it, Doehr's claim here is for damages proximately resulting from Di Giovanni's *ex parte* civil proceeding to attach Doehr's real property, a proceeding that ended favorably for Doehr when the attachment statute was declared unconstitutional. Doehr's claim therefore falls within the definition of malicious prosecution. *See* 54 C.J.S. *Malicious Prosecution* § 2 (1987). We think that malicious prosecution is the most closely analogous tort and look to it for the elements that must be established in order for Doehr to prevail on his § 1983 damages claim. Accordingly, having established that Di Giovanni's attachment proceeding ended in failure, it remains for Doehr to demonstrate want of probable cause, malice and damages. The burden of proof is, of course, upon the plaintiff.

In establishing the requisite element of lack of probable cause, reference must be made to the definition existing at the time of the enactment of § 1983. At that time, probable cause was defined as follows:

Probable cause—or, as the expression oftener is, reasonable and probable cause—is any such combination of facts and proofs as may fairly lead the reasonable mind to the belief (and the person relying on it must believe) that, in the absence of hitherto unknown qualifying or rebutting evidence, the prosecution or other suit ought to be successful.

Bishop, *supra,* § 239, at 95 (footnotes omitted). It is interesting to note that a more modern definition of probable cause to initiate civil proceedings incorporates similar elements:

One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either

(a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or

(b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information.

*Restatement (Second) of Torts* § 675 (1977). There is common law authority that it is objectively reasonable to act on the basis of a statute not yet held invalid. *See, e.g., Birdsall v. Smith,* 158 Mich. 390, 122 N.W. 626, 627 (1909) (holding that "[e]very statute should be considered valid until there is a judicial determination to the contrary, and these defendants had a right to act upon such assumption"). The case would be different, however, if those who act in reliance on a statute can be "shown to know that such [statute] was unconstitutional and would be declared so." *Id.*

 The element of malice implicates an evil or unlawful purpose. Bishop, *supra,* § 232, at 92. It includes "the pursuit of the lawful end by the intentionally unlawful means." *Id.* § 233, at 93. Generally, malice

> may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff. Impropriety of motive may be established by proof that the defendant instituted the prior proceedings against the plaintiff, for instance, ... for the purpose of obtaining a private advantage against him ...; thus, malice is sufficiently established in an action for malicious prosecution if it appears that the prior suit was commenced in bad faith to vex, annoy, or harass the adverse party.

52 Am.Jur.2d *Malicious Prosecution* § 152, at 277–78 (1970) (footnotes omitted). Malice may be inferred from the lack of probable cause. Bishop, *supra,* § 235, at 93; Keeton, *supra,* § 120, at 895. Reliance upon the advice of an attorney may negate malice, however. Bishop, *supra,* § 236, at 93–94.

 It seems clear that an action for malicious prosecution or wrongful civil proceeding extends to claims for damages arising from an improper attachment. *See* Keeton, *supra,* § 120, at 890. Actual damages that proximately result from the wrongful proceeding are recoverable. *Id.* at 895. Damages may be sought for interference with property, loss of credit and other tangible and intangible losses arising from the attachment. *Id.* at 895–96. In connection with the claims in this case, we note that

Doehr contends that Di Giovanni failed to release the attachment until some time after it was finally determined that the attachment was based upon an unconstitutional statute. We think that the continuation of the attachment under such circumstances may give rise to a claim for damages provided the other elements of malicious prosecution are established in connection with the failure to discontinue. *See* 52 Am.Jur.2d *Malicious Prosecution* § 26, at 203 (1970).

We note in this connection our disagreement with the district court's rejection of Doehr's claim "for defendant's alleged wrongful attachment and for defendant's tardy release of the attachment" after the declaration of unconstitutionality by invoking *Lugar,* 457 U.S. at 942, 102 S.Ct. at 2756, for the proposition that "[t]he use or abuse of an ex parte attachment statute does not present a valid cause of action." *Lugar* stated that: "Petitioner did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged *only* misuse or abuse of the statute." *Id.* (emphasis added). Thus, at a minimum, *Lugar* does not preclude a § 1983 claim for misuse or abuse of an attachment statute after it has been declared unconstitutional.

Because we today announce a new rule to govern damage claims for due process violations under § 1983 where the violation arises from a private party's invocation of a state's statutory remedy, we think that we should remand for further consideration in this case. The parties could not have been aware of the requirements we now impose upon plaintiffs who seek to establish their claims for damages in such a situation. It seems to us only fair to provide Doehr with the opportunity to present evidence in an effort to carry his difficult burden of proof and also to allow Di Giovanni to present any evidence he may desire to adduce. The stipulation entered into by the parties certainly is inadequate to allow a proper determination in this case, given the requirements of the new rule.

## II. *Attorney's Fees*

The district court determined that, since Doehr did not succeed on the issue of dam-

ages, he was not entitled to attorney's fees for services in that connection. In view of our disposition of this appeal, we think that the question of attorney's fees on the damages issue should abide the determination of the damages issue on remand.

■ It may be that after the district court has considered the case, Doehr will be entitled to nominal damages, as was the plaintiff in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), a procedural due process case. Such a plaintiff may qualify as a prevailing party so as to be entitled to attorney's fees under *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), and *Ruggiero v. Krzeminski,* 928 F.2d 558 (2d Cir.1991).

■ Doehr also contends that the district court erred by denying his claim for attorney's fees and costs based on Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Doehr claims that Di Giovanni has made frivolous motions by requesting the district court to violate the orders of the Supreme Court and this Court. However, the district court properly recognized that neither the United States Supreme Court nor the Second Circuit Court of Appeals required entry of a judgment of damages against defendant. We consider that Di Giovanni's actions were reasonable under the circumstances, since the motions that he filed primarily sought dismissal of the claim for damages. The district court properly denied attorney's fees and costs under Rule 11 and § 1927 for failure to establish a proper basis for the recovery of such fees and costs.

## CONCLUSION

We vacate the judgment of the district court and remand for further proceedings in accordance with the foregoing.

OAKES, Senior Circuit Judge, concurring:

I concur in the judgment of the court but write to express caveats concerning (1) the interpretation of § 1983 and (2) the choice of malicious prosecution as the most analogous common-law tort to Doehr's action.

My first reservation concerns the majority's proposition that when interpreting 42 U.S.C. § 1983, a court is bound to look to the common law as it existed in 1871 when the Civil Rights Act was passed. I acknowledge that the Supreme Court has employed such analysis in its line of cases involving the immunity of state officials. *See, e.g., Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967); *Scheuer v. Rhodes,* 416 U.S. 232, 239–49, 94 S.Ct. 1683, 1687–93, 40 L.Ed.2d 90 (1974); *Wood v. Strickland,* 420 U.S. 308, 318–21, 95 S.Ct. 992, 999–1000, 43 L.Ed.2d 214 (1975); *Imbler v. Pachtman,* 424 U.S. 409, 420–24, 96 S.Ct. 984, 990–92, 47 L.Ed.2d 128 (1976); *Harlow v. Fitzgerald,* 457 U.S. 800, 806–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982); *Tower v. Glover,* 467 U.S. 914, 920–23, 104 S.Ct. 2820, 2824–26, 81 L.Ed.2d 758 (1984); *Wyatt v. Cole,* 504 U.S. 158, 163–69, 112 S.Ct. 1827, 1830–34, 118 L.Ed.2d 504 (1992). In these cases, I agree with the Court that reference to historic common law may be appropriate because the issue of the breadth of liability of government officials was purposefully left vague under the Act.

I am unconvinced, however, that we must define the whole law of constitutional torts by reference to the common law as it existed in 1871. Though the Supreme Court appeared to endorse such an approach in *Wyatt* when it discussed the torts of malicious prosecution and abuse of process, an alternative reading of *Wyatt* would limit such historical analysis to the immunity context. Indeed, in *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), the Court, holding that the NLRA creates rights redressable under § 1983, seemed to change the focus of § 1983 analysis from an historical inquiry toward a functional interpretation, though it did not, as one commentator has noted, "complete[ ] the process of divorcing section 1983 from its historical roots." Note, *The Supreme Court, Leading Cases,* 104 Harv. L.Rev. 129, 340 (1990). I see no reason why, when analyzing the elements of a constitutional tort under § 1983 as opposed to the scope of immunity or immunity-like defenses, courts should not look to current common law. I have found nothing in the legislative history of the Civil Rights Act of 1871 to the contrary. In fact,

considering the broad language of the Act itself, I believe an evolving interpretation should be required.

My second caveat is shorter and perhaps more to the point. Neither the Court in *Wyatt* nor the majority here consider the full range of historical common law torts that are analogous to § 1983 actions. Rather than comparing this case to malicious prosecution or abuse of process, I would find it most analogous to an action for unjustifiable ancillary proceedings, cognizable in a number of jurisdictions in 1871. In such a cause of action, it is necessary only that the ancillary attachment proceeding terminate favorably, and it is immaterial whether the principal proceeding (here, the action for assault and battery) has been in any way improper. *See* Fowler V. Harper, *et al., The Law of Torts* (3d ed.1986) § 4.8 at 4:63; *Restatement (Second) of Torts* (1977) § 674 cmt. f. As Harper, *et al.,* point out:

> Some jurisdictions permit an action, either at common law or by statute, for wrongful attachment, apart from the tort of malicious prosecution.... It has been held in such jurisdictions that for 'actual damages' sustained as a result of the wrongful attachment there is no requirement that the attachment defendant show impropriety of purpose, lack of probable cause, or termination of the attachment proceedings.

§ 4.8 n. 5 at 4:63–:64 (citing *Sherwin–Williams Co. v. Crovetto,* 388 So.2d 109 (La. Ct.App.1980); *Pourney v. Seabaugh,* 604 S.W.2d 646 (Mo.Ct.App.1980); *Seay v. Greenwood,* 21 Ala. 491 (1852); *Donnell v. Jones,* 13 Ala. 490 (1848); *McLaughlin v. Davis,* 14 Kan. 168 (1875); *Talbot v. Great Western Plaster Co.,* 167 Mo.App. 542, 152 S.W. 377 (1912); *Reliable Mut. Hail Ins. Co. v. Rogers,* 61 Okl. 226, 160 P. 914 (1916); *Fred Mercer Dry Goods Co. v. Fikes,* 211 S.W. 830 (Tex.Civ.App.1919); *Fisher v. Scherer,* 169 S.W. 1133 (Tex.Civ.App.1914)).

It seems to me that the case at hand fits at least as well into an unjustifiable ancillary proceeding analysis as into a malicious prosecution analysis, though I realize *Wyatt* points us toward the latter tort. Were I writing on a clean slate, I would define the instant action in terms of unjustifiable ancillary proceeding and remand accordingly.